UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LAZARO C. MARTINEZ, | ) | CIV. 10-5027-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

On August 21, 2006, Plaintiff Lazaro C. Martinez applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 (2006). (Administrative Record, pp. 106-11).[1] Plaintiff was allegedly disabled since July 29, 2005, due to neck, throat, and arm pain, headaches, and weakness. (Docket 11 at ¶ 2). An Administrative Law Judge ("ALJ") held an evidentiary hearing on April 24, 2008. Id. On June 3, 2008, the ALJ concluded Mr. Martinez was not disabled and denied benefits.[2] Id. The Appeals Council denied plaintiff's request for review. (AR, pp. 28-30). The decision of the ALJ became the final decision of the Commissioner. Id. Plaintiff timely filed his complaint in district court. (Docket 1).

---

[1]The court will cite to information in the administrative record by referencing "AR, p. ____."

[2]The ALJ found Mr. Martinez met the insured status requirement for benefits through December 30, 2010. (Docket 11 ¶ 3).

The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 8). If there were any disputed facts, the parties were required to attach a separate joint statement of disputed facts. Id. The parties filed their JSMF. (Docket 11). Plaintiff then filed a motion for an order reversing the decision of the Commissioner. (Docket 12). For the reasons stated below, the motion is denied and the decision of the Commissioner is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 11) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted). Substantial evidence is evidence that a reasonable mind might accept as adequate to support the Commissioner's

2

decision. Choate, 457 F.3d at 869 (quoting Ellis v. Barnhart, 392 F.3d 988, 993 (8th Cir. 2005)). The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security

Administration established a five-step sequential evaluation process for determining whether an individual is disabled.  20 CFR § 404.1520(a)(4).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (Docket 11 at ¶ 3).

THE FIRST STEP

At step one, the ALJ must determine if the claimant is engaging in substantial gainful activity ("SGA").  20 CFR § 404.1520(b).  SGA is defined as "work activity that is both substantial and gainful."  20 CFR § 404.1572.  "Substantial work activity is work activity that involves doing significant physical or mental activities."  20 CFR § 404.1572(a).  "Gainful work activity is work activity you do for pay or profit . . . whether or not a profit is realized."

20 CFR § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed the claimant has demonstrated the ability to engage in SGA and is not disabled. 20 CFR §§ 404.1574 and 404.1575. If the claimant is not engaging in SGA, the analysis proceeds to step two.

The ALJ determined Mr. Martinez had not been engaged in substantial gainful activity since July 29, 2005. (Docket 11 at ¶ 3). Thus, the evaluation proceeds to step two.

THE SECOND STEP

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. 20 CFR § 404.1521. Basic work activities focus on "the abilities and aptitudes necessary to do most jobs." Id. at subsection (b). Examples of those abilities and aptitudes are:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

5

>   (3)   Understanding, carrying out, and remembering simple instructions;
>
>   (4)   Use of judgment;
>
>   (5)   Responding appropriately to supervision, co-workers and usual work situations; and
>
>   (6)   Dealing with changes in a routine work setting.

Id. If a claimant has a severe impairment or a combination of impairments which are severe, the analysis continues to step three.

At step two, the ALJ found Mr. Martinez "had degenerative disc disease of the cervical spine with a subsequent fusion in October 2005, a right clavicle deformity, T3-4 disc protrusions, right carpal tunnel syndrome with ulnar neuropathy, myofascial pain syndrome, and headaches, impairments that were 'severe' within the meaning of the regulations." (Docket 11 at ¶ 3). The evaluation then proceeds to step three.

THE THIRD STEP

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525 and 404.1526. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR

§ 404.1509, claimant is considered disabled.  If not covered by these criteria, the analysis is not over and the ALJ proceeds to the next step.

The ALJ determined Mr. Martinez did not have an impairment or combination of impairments which met or were medically equal to one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  (Docket 11 at ¶ 3).  Mr. Martinez does not challenge that conclusion.  (Docket 13).

THE FOURTH STEP

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC").  20 CFR § 404.1520(e).  RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments.  20 CFR § 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.  20 CFR § 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR §§ 404.1520(e) and 404.1545.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation.  20 CFR § 404.1545(e).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and

prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions." 20 CFR § 404.1527(a)(2). In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations. 20 CFR § 404.1527(d).

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence."). The ALJ "still 'bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence.' " Guilliams, 393 F.3d at 803 (quoting Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

Medical opinions are considered evidence which the ALJ must evaluate in determining whether a claimant is disabled, the extent of the disability, and the claimant's RFC. 20 CFR § 404.1527(a)(2). All medical opinions are evaluated according to the same criteria, summarized as follows:

    1.     Whether the opinion is consistent with other evidence in the record;

    2.     Whether the opinion is internally consistent;

    3.     Whether the person giving the medical opinion examined the claimant;

    4.     Whether the person giving the medical opinion treated the claimant;

    5.     The length of the treating relationship;

    6.     The frequency of examinations performed;

    7.     Whether the opinion is supported by relevant evidence, especially medical signs and laboratory findings;

    8.     The degree to which a non-examining or non-treating physician provides supporting explanations for their opinions and the degree to which these opinions consider all the pertinent evidence about the claim;

    9.     Whether the opinion is rendered by a specialist about medical issues related to his or her area of specialty; and

    10.    Whether any other factors exist to support or contradict the opinion.

See 20 CFR § 404.1527(a)-(d); Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007).

At step four, the ALJ found Mr. Martinez retained the residual functional capacity ("RFC") for light work with <u>frequent</u> reaching below shoulder level; <u>occasional</u> kneeling, crouching, stooping, climbing, fingering, feeling, and handling with the right hand; <u>unlimited</u> use of the left hand; and

9

no heights, ladders, scaffolds, operation, of dangerous machinery, temperature extremes, crawling, or reaching above the shoulder. (Docket 11) (emphasis added). The Social Security Administration regulations define "light work" as:

> [W]ork involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567(b). If a claimant is determined to be capable of performing light work, they are also capable of doing sedentary work.[3] Id.

Mr. Martinez argues the ALJ only gave "lip service to the opinions of Dr. Brett Lawlor . . . ." (Docket 13, p. 1). Mr. Martinez also objects that the ALJ discounted the opinions of his treating physician, Dr. Brady. Id. at p. 3. Mr. Martinez's argument is premised on his assertion the ALJ placed "too much weight on a functional capacity evaluation [FCE] performed in June, 2006. . . . and [gave] considerable weight to a physical residual functional capacity [RFC] assessment done by Dr. Kevin Whittle in October of 2006." Id. at p. 2. "[T]he FCE by the physical therapist should not be allowed to override the opinion of a treating doctor, especially a specialist in the treatment of chronic pain like

---

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 CFR § 404.1567(a).

10

Dr. Lawlor." Id.  Plaintiff also argues the ALJ gave inadequate weight to Dr. Lawlor's opinions because "the ALJ refers to Dr. Lawlor as a [sic] orthopedic physician, but . . . he is actually a physiatrist or physical medicine specialist." Id.  Plaintiff argues Dr. Lawlor's opinions should be given controlling weight because those "opinions regarding Claimant's physical capacity stem from an evaluation on February 12, 2008, nearly two years . . . after the FCE and the [RFC] assessment."  Id.

Without going through Mr. Martinez's medical records in detail,[4] on February 12, 2008, Dr. Lawlor reported:

> [Mr. Martinez] [frequently] could lift and carry 20 pounds occasionally and 10 pounds . . . ; never climb ladders or scaffolds, crawl, reach overhead with his right arm, operate heavy equipment or drive heavy trucks; occasionally stoop, crouch, kneel, crawl, perform extended reaching with his right arm at shoulder level, finger, feel, handle, rotate his neck, performed static forward positioning of the head and neck; and frequently stand and walk, but with changing position every 15 minutes. . . . Plaintiff could sit fore [sic] hours total in a day with breaks every 15 minutes. . . . [and] could gradually return to work four hours for one month, six hours for the next month, and eight hours or full time the third month.

(Docket 11, ¶ 20) (emphasis added).

Just two months later, Dr. Brady prepared a report for consideration by the Social Security Administration.  Id. at ¶ 21.  In this report, Dr. Brady stated:

> [Mr. Martinez] could sit two hours at a time and for eight hours in an eight-hour workday; stand/walk four hours at a time and four hours

---

[4]See Docket 11, ¶¶ 5-11, 13-15, 18-21.

11

> in an eight-hour workday; <u>never</u> reach, finger, feel, push, or pull with his right hand; <u>occasionally</u> handle with his right hand; <u>occasionally</u> reach with his left hand; <u>frequently</u> handle, finger, feel, push, and pull with [his] left hand; <u>frequently</u> operate foot controls; <u>never</u> climb stairs, ramps, ladders, or scaffolds; <u>occasionally</u> balance; <u>never</u> stoop, kneel, crouch, crawl, or work in exposure to unprotected heights, moving mechanical parts, extreme temperature extremes and vibrations; and <u>occasionally</u> operate a motor vehicle and work in exposure to humidity and environmental irritants.

<u>Id.</u> Dr Brady opined Mr. Martinez "appeared unemployable." <u>Id.</u> One week later, Dr. Brady stated Mr. Martinez would need to take significant breaks during a workday and was not capable of sitting or filing more than an hour or two at a time. <u>Id.</u>

In arriving at the RFC, the ALJ gave "great weight," but not "controlling weight" to Dr. Lawlor's opinions and "lesser weight" to the opinions of Dr. Brady. (AR, pp. 48-49). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." <u>House v. Astrue</u>, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted). However, "while entitled to special weight, it does not automatically control, particularly if the treating physician evidence is itself inconsistent." <u>Id.</u> (citations and internal quotation marks omitted). If the treating physician's opinion is not given controlling weight under 20 CFR § 404.1527(d)(2), it must be weighed considering the factors in 20 CFR §§ 404.1527(d)(2)-(6). <u>See</u> <u>Shontos v. Barnhart</u>, 328 F.3d 418, 426 (8th Cir.

12

2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . ."). The ALJ must " 'give good' reasons for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

The ALJ adopted Dr. Lawlor's opinions, with one exception. (AR, p. 48). The ALJ concluded Dr. Lawlor's opinion regarding Mr. Martinez's sitting, standing and walking functions were not supported by Mr. Martinez's impairment, the medical evidence in the record, the FCE, or his own testimony. Id. In the 2006 FCE, Mr. Martinez perceived himself as only being able to function in the light physical demand category, although he performed within a medium physical demand category during the testing. (Docket 11, ¶ 12). In the February 7, 2008, medical record, Dr. Lawlor reported Mr. Martinez had a "normal gait; normal muscle strength; . . . [and] normal reflexes . . . ." Id. at ¶ 19. There is no reference in this report of any difficulties with sitting, standing or walking. Id.

Dr. Lawlor reported Mr. Martinez could "frequently stand and walk, but with changing positions every 15 minutes." Id. at ¶ 20. Dr. Lawlor's comment also conflicted with Mr. Martinez's own testimony regarding his ability to sit, stand and walk. At the administrative hearing, Mr. Martinez testified he sometimes walked a mile or more. Id. at ¶ 24. He estimated he could sit for 15 to 20 minutes and then needed to get up and walk around. Id.

The ALJ gave less weight to Dr. Brady's opinions because he had not treated Mr. Martinez for nearly one and one-half years, he had conducted no medical examination or testing and his opinions were inconsistent with the other medical records. (AR, p. 49). Dr. Brady included limitations for activities with Mr. Martinez's left hand, even though there was no reference in any other part of the medical records or Dr. Lawlor's restrictions regarding the left hand.

The ALJ is free to accept those opinions of a treating physician which are supported by the medical evidence and plaintiff's own testimony. See House, 500 F.3d at 744-46. "[W]hen a treating physician's opinions are inconsistent [with] . . . the medical evidence as a whole, they are entitled to less weight." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citations omitted). The ALJ gave good reasons for not assigning controlling weight to Dr. Lawlor's opinion and discounting Dr. Brady's opinions. Dolph, 308 F.3d at 878-79.

The ALJ is also entitled to give little weight or no weight to Dr. Brady's opinion that Mr. Martinez was probably unemployable. "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." House, 500 F.3d at 745 (citing Krogmeier, 294 F.3d at 1023).

Plaintiff failed to show how mislabeling Dr. Lawlor as an orthopedic physician as opposed to a physiatrist affected the ALJ's acceptance of Dr.

Lawlor's opinions. The ALJ gave great weight, but not controlling weight, to Dr. Lawlor's opinions, not because of his medical specialty but because the doctor's opinion on sitting, standing and walking was inconsistent with the remainder of the medical record. The error in misidentifying Dr. Lawlor's speciality was harmless. Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008) (citing Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) (concluding that any error on the part of the ALJ was harmless because there was "no indication that the ALJ would have decided differently" in the absence of the error).

Mr. Martinez also challenges the ALJ's determination of the impact of subjective pain on plaintiff's ability to work. (Docket 13, p. 3). The regulations require the ALJ to consider the claimant's "statements about the intensity, persistence, and limiting effects" of any symptoms, including pain, to determine credibility. 20 CFR § 404.1529(c)(4).

The court must "defer to an ALJ's credibility finding[s] as long as the ALJ . . . gives a good reason [for those findings]." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal citation and quotation marks omitted). The ALJ's credibility finding may be upheld when it is "supported by good reasons and substantial evidence." Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). The ALJ properly cited the factors relevant to judging a claimant's subjective complaints.

> The Regulations provide the following factors that must be considered in such evaluation by the Administrative Law Judge: (i) the claimant's

15

> activities of daily living; (ii) the location, duration and frequency and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of medications taken to alleviate pain or the other symptoms; (v) treatment, other than medication, for the relief of pain or other symptoms; (vi) any measures other than medication used to relieve pain or the other symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by the medically determinable impairments (SSR 85-16); See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

(AR, p. 40). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ concluded Mr. Martinez's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (AR, p. 46). Those inconsistencies found by the ALJ are summarized as follows:

1. A sporadic work history prior to the disability onset date;

2. Complaints of side effects from medicines not corroborated in the medical records;

3. While pain is documented in the medical record, those records do not support a claim of severe, disabling pain symptoms;

4. The medical records show good bilateral muscle strength, with finding of full range of motion, except with regard to right shoulder function; and

> 5. Activities of daily living described by Mr. Martinez are not consistent with debilitating pain.

Id. at pp. 46-47. The ALJ properly considered Mr. Martinez's subjective complaints of pain and found they were not credible in light of the medical record. Gonzales, 465 F.3d at 894.

At step four, the ALJ found that given Mr. Martinez's RFC he was unable to perform his past relevant work in the construction industry.[5] (AR, p. 49). The evaluation process continues to step five.

THE FIFTH STEP

At step five, "the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform." Baker, 159 F.3d at 1144. "[T]he Commissioner's burden is to demonstrate that . . . jobs are available in the national economy, realistically suited to the claimant's residual functional capabilities." Id. "In determining the availability of such jobs, the claimant's exertional and nonexertional impairments, together with his age, education, and previous work experience, must be considered." Id. The Commissioner may satisfy this burden of proof by use of a hypothetical question, posed to a vocational expert, which "fairly reflect[s] the abilities and impairments of the claimant as evidenced in the record." Id.

---

[5] Mr. Martinez's work experience was as a construction worker, carpenter helper and heavy equipment operator. (Docket 11, ¶ 3).

Testimony from a vocational expert constitutes substantial evidence when the testimony is "based on a properly phrased hypothetical question . . . ." Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (citing Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999)). The hypothetical question should include all of the claimant's impairments that are supported by substantial evidence in the record as a whole. Id. "A hypothetical question . . . is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true." Id. (internal citation and quotation marks omitted). See also Finch v. Astrue, 547 F.3d 933, 937 (8th Cir. 2008) ("Although there is evidence in the record that might sustain a different finding, the ALJ's determination is supported by substantial evidence.").

However, "the hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture 'the concrete consequences' of those impairments." LaCroix, 465 F.3d at 889 (citing Roe v. Chater, 92 F.3d 672, 676-77 (8th Cir. 1996)). The ALJ is not required to include limitations in the hypothetical question which are not supported by the record. Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004) (the "fact that the ALJ omitted from his hypothetical question those aspects of [claimant's] subjective complaints that the ALJ considered non-credible does not render the question faulty.") (citing Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004).

18

Mr. Martinez's final objection is to the ALJ's hypothetical question. "[T]the ALJ used . . . [a] [RFC] in his hypothetical, which was obviously based upon his adoption of the FCE and [RFC] done in 2006 . . . rather than the opinions of Dr. Lawlor from his evaluation in 2008 and the opinions of Plaintiff's primary treating physician, Dr. Brady." (Docket 13, p. 3). The objections raised regarding the hypothetical question are the same objections raised by Mr. Martinez and rejected earlier in this discussion. The ALJ's hypothetical question was proper in content and identified the impairments supported by the substantial evidence in the record. See Docket 11, ¶ 25.

Jerry Gravatt, a vocational expert, testified in response to the ALJ's hypothetical question that Mr. Martinez could work in a number of light work jobs. (Docket 11, ¶ 25). Those included work as a garment sorter (an unskilled, light work position) which had 510 jobs in the region and 129,812 jobs nationally; an electrical inspector (a semi-skilled, light work position) which had 661 jobs in the region and 461,919 jobs nationally; and as an inspector of finished products (an unskilled, light work position) for which there were 194 jobs in the region and 20,977 jobs nationally. Id.

Considering the record as a whole, the ALJ determined Mr. Martinez was not disabled under the Social Security regulations and not entitled to benefits. (AR, pp. 50-51). The court finds substantial evidence in the record as a whole supports the Commissioner's decision. Choate, 457 F.3d at 869. The court

19

further concludes no error of law was committed and the decision of the Commissioner should be affirmed.  Smith, 982 F.2d at 311.

## ORDER

Based upon the above analysis, it is hereby

ORDERED that plaintiff's motion (Docket 12) is denied.

IT IS FURTHER ORDERED that pursuant to sentence four of 42 U.S.C. § 405(g) the decision of the Commissioner is affirmed.

Dated March 24, 2012.

>BY THE COURT:
>
>/s/ *Jeffrey L. Viken*
>JEFFREY L. VIKEN
>UNITED STATES DISTRICT JUDGE